# Bernard Baumgarden, Plaintiff in Error, v. George L. Bradshaw, Defendant in Error.

## Gen. No. 16,761.

1. LANDLORD AND TENANT—*lease providing for payment of increased insurance rates construed.* Held, that by the terms of the covenant that the parties contemplated insurance only of the building and not insurance upon rents.

2. CONTRACTS—*how to be construed.* The words and phrases of an instrument are to be given their plain and ordinary meaning and sense with respect to the particular subject-matter contemplated by the contract unless the context shows that the parties used the words in question in some peculiar and unusual sense.

Error to the Municipal Court of Chicago; the HON. J. D. TURNBAUGH, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1910. Affirmed. Opinion filed April 19, 1912.

PINES & NEWMAN, for plaintiff in error.

FRANK WENTWORTH SWETT, for defendant in error.

MR. JUSTICE F. A. SMITH delivered the opinion of the court.

The plaintiff in error, Bernard Baumgarden, hereinafter called plaintiff, brought an action of the fourth class in the Municipal Court of Chicago against defendant in error, George L. Bradshaw, hereinafter called defendant, based upon covenants contained in two written leases by virtue of which covenants the defendant obligated himself that in the event the rate of insurance on the buildings described in the lease was increased because of certain contingencies, to pay to the plaintiff such additional rate of insurance, and further, to pay to the plaintiff all costs and expenses of whatever nature incurred in enforcing the covenants of the leases.

The facts shown in evidence on the trial and the

holdings of law were stipulated to by the parties, and approved by the trial judge, and made a part of the record as follows:

"This was a suit for the recovery of certain moneys in the sum of $986.59 claimed to be due by the plaintiff from the defendant by virtue of the terms of two certain leases entered into by and between the parties to this suit, said leases having been introduced and admitted in evidence as Plaintiff's Exhibits '1' and '2.'

Plaintiff's statement of claim recites that by virtue of the covenants of these two leases, the defendant obligated himself that in the event the rate of insurance was increased on the buildings in which the premises demised were contained, by reason of certain contingencies, that the defendant undertook to pay such additional insurance, and further, to pay to the plaintiff all costs and expenses of whatever nature incurred in enforcing the covenants of said leases. The statement further recites that by reason of the said contingencies the rate of insurance upon said buildings had been materially increased and that the defendant thereby became liable to pay the sum of $986.59. The affidavit of claim is attached to the statement, of which the foregoing is the substance. Subsequently under rule of court plaintiff filed an amended statement setting forth specifically on what policies the increase was claimed. Subsequently to this, on May 24, 1910, being the first day of the trial of the case, plaintiff filed an amendment to the amended statement of claim setting forth the amounts and dates of ten additional policies, the increased rate on which went to make up the total of $986.59 claimed by the plaintiff. All of the policies of insurance are insurance policies on rent except the second one mentioned in the said amended statement of claim, which is for $58,000.00 in the London and Liverpool Globe.

Upon the filing of the amendment to the amended statement of claim, the court ruled, on the motion of the parties, that the affidavit of merits or of defense already on file stand as the affidavit of defense to the

last amended bill of particulars. In his affidavit of defense the defendant admitted liability on the increase of insurance on the buildings and paid into the clerk of the court upon the filing of said affidavit, the sum of $345.37, but as to the amounts claimed under the remaining policies the defendant denied all liability thereunder, stating that such additional insurance was insurance on rents as distinguished from insurance on buildings, and that it was the latter only which the defendant undertook to pay in and by said lease or leases.

The issue presented for the consideration and determination of the court is the interpretation of those clauses of the lease or leases which covenant with reference to insurance, and whether or not these clauses should be so interpreted together with the entire instrument so as to include insurance on rents as well as insurance on buildings.

On March 29, 1909, defendant in error, George L. Bradshaw, entered into a lease of the premises known as 166, 168 and 170 State street, Chicago, Illinois, the lease running from the date thereof to April 30, 1922. Subsequently on September 14, 1909, plaintiff in error entered into another lease with said Bradshaw in and by which he leased the premises known as the fourth and fifth floors of the building at 172 State street, and immediately adjoining and to the south of the premises first demised on March 29th.

The object of defendant in error of leasing the two upper floors of 172 State street was to connect them with the premises already occupied and under lease by him from the plaintiff in error; and immediately after the second lease was entered into the alterations provided for in the lease by way of connecting up the two buildings, etc., were made in accordance with the provisions of the second lease and with the approval of the landlord. The alterations so made were those contemplated by both parties at the time of entering into the second lease.

It is admitted that the specific question of insurance on rents as distinguished from insurance on buildings or any other kind of insurance, was not mentioned be-

tween the parties at any time. The evidence shows that the defendant in error had no knowledge that any insurance on rents was carried by the plaintiff in error. The rate of insurance on the buildings had increased from the time of the writing of $58,000.00 policy on the building from 67c per hundred dollars at 91c per hundred dollars for causes occasioned other than by the making of the alterations referred to and for causes for which the defendant in error was not responsible. The evidence further shows that the increase from 91c per hundred to $1.19 per hundred on the insurance on the building was occasioned by defendant in error in making the alterations mentioned in the second lease.

The sum of $345.37 claimed by the plaintiff as increased insurance on the building was tendered by plaintiff to the defendant some months before the beginning of this suit and the tender was kept good.

The evidence shows that insurance on rents is insurance on another and different subject than insurance on buildings; also that under the rules of the Chicago Board of Underwriters insurance on rents and insurance on buildings are separate subjects of insurance and must be insured separately in different policies.

The evidence shows that whatever may be the subject of fire insurance, whether buildings or chattels of any kind or rents or income, the Standard fire insurance policy is used and the particular nature of the thing or chattels or buildings insured is shown by the rider which is affixed or pasted on the Standard policy as in the case of the $58,000.00 policy in evidence which is on the building, and the $84,000.00 policy in evidence which is on the rents.

The evidence shows that the rate of insurance on rents is arrived at by using the rate of insurance on buildings as a unit. That is to say, the rate of insurance on rents is always a certain percentage of the insurance upon the buildings.

The ten policies of insurance on rents which are described in plaintiff's second amended bill of particulars as the last ten items thereof, and which include all of the policies sued on except the two policies in the

Liverpool and London and Globe for $84,000.00 and $58,000.00, respectively,—contain the name of Bernard Baumgarden as the assured. The two larger policies last mentioned in the Liverpool and London and Globe contain the name of Frederick Ayer as the assured. Frederick Ayer was the landlord of Bernard Baumgarden, who in turn, leased to defendant Bradshaw.

All of the ten policies mentioned insuring the rents of Bernard Baumgarden were issued and procured in January, 1910. All of the policies were introduced in evidence over the objections of the defendant, and at the conclusion of the testimony the defendant moved the court to strike out of the evidence said insurance policies. This motion was denied.

The policy of insurance for $5,000 in the New Hampshire Fire Insurance Company, described as the third item in the second amended bill of particulars,—which was introduced in evidence as Plaintiff's Exhibit 5, is a fair sample of all of the remaining policies shown in said second amended bill of particulars, and for the sake of brevity is the only one included in making up the record.

The evidence shows that the connecting up of the building, as provided for in the lease of September 14, 1909, necessarily, of itself, caused an increase in the rate of insurance on the building.

Counsel for plaintiff asked the court to hold as a proposition of law that the leases and particularly the clauses which refer to insurance should be interpreted so as to include rental insurance or insurance on rents, which proposition however, the court refused to hold.

But the court did hold the following proposition to be the law of the case on motion of defendant:

"The court holds as a proposition of law applicable to the facts in this case that the defendant contracted in and by said leases to pay the increased rate of insurance upon the buildings only; and that all of the insurance policies introduced in evidence, except a $58,000.-00 policy, upon the building, are policies covering another and different subject matter than the building, namely: the rents accruing from the buildings."

The lease dated September 14, 1909, between Baumgarden as lessor and Bradshaw as lessee, after various covenants as to alterations in the premises, provided as follows, in clause 12:

"If any such alterations, additions or improvements shall of themselves increase the rate of insurance on any of the said buildings, by reason of any of said additions, improvements or alterations, or by reason of the increased area, the said lessee hereby agrees to pay such additional cost of insurance as may be charged against said buildings for and during the life of this lease, such additional insurance to be determined and passed upon by the Board of Underwriters, and the lessor shall have the right to pay the same, which additional insurance is hereby declared to be so much additional rent, and shall be due and payable with the next installment of rent due and payable under this lease; provided, however, that if the increased rate of insurance shall arise from causes other than those above set forth, the lessee shall not be liable to pay the same."

In our opinion the holdings of law and the finding and judgment of the trial court were based upon a correct construction of the covenants of the lease, and are correct upon the facts and the law of the case. It seems clear to us from the terms of the covenant that the parties contemplated insurance only on the building at the time of the drawing of the lease. This appears from the language of the paragraph of the lease in question; and also from the facts shown by the evidence, that Bradshaw did not know at the time that Baumgarden carried any rent insurance; and that rent insurance was not only not mentioned in the lease or leases, but Baumgarden never at any time mentioned rent insurance to Bradshaw, verbally or otherwise. In our opinion there is really no question of construction involved. The language is clear and unambiguous. The words and phrases of an instrument are to be given their plain and ordinary meaning and sense with respect to the particular subject matter contemplated

by the contract, unless the context shows that the parties used the words in question in some peculiar and unusual sense. Considering the instrument as a whole we find no evidence of any such use of the words of the lease. Fire insurance is the only kind of insurance mentioned in the lease. The subject-matter of rent insurance,—a very different subject—is nowhere mentioned. It would be straining and forcing the language of the clause or paragraph in question far away from its plain, ordinary and usual meaning to make it cover the subject of rent insurance, as contended by plaintiff. It would be just as reasonable to hold that the lease bound Bradshaw to pay an increased rate of insurance upon an immensely valuable stock of merchandise carried by a tenant, or by Baumgarden himself, on the ground floor or in other parts of the building, as to hold that it made Bradshaw responsible for the increased rate of insurance upon the rents arising out of the building. The theory or construction contended for by plaintiff might make Bradshaw assume an undertaking which would convert his lease into a liability of vast proportions, instead of an asset, under a clause which, on its face and in the common understanding of the language used, refers to insurance on buildings, without even suggesting insurance on chattels or intangible property like rents or income. We are unable to gather any such intention of the parties from the terms employed by them; and we cannot extend by construction the provisions of the lease or leases to include what is not expressed, and what would be a harsh or oppresive meaning of the terms used.

In our opinion the judgment is in accord with the facts proved and the law. The judgment is affirmed.

*Affirmed.*